UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM E. BENNETT, an individual
d/b/a WEB Themes

       Plaintiff,                              Case No. 06-13221

vs.                                          HONORABLE DAVID M. LAWSON
                                              HONORABLE STEVEN D. PEPE

AOL LLC, a Delaware corporation;
TIME WARNER Inc., a Delaware
corporation; TUCOWS, Inc.,
a Delaware corporation; JOHN DOE

       Defendants.
_____/

**REPORT AND RECOMMENDATION**
**ON SUMMARY JUDGEMENT MOTIONS (Dkt #51, 61, & 67)**

**I.    PROCEDURAL HISTORY**

On January 4, 2007, Plaintiff filed his "Motion for Partial Summary Judgement" against all Defendants (Dkt. #51). On February 13, 2007, Defendant AOL LLC filed its "Motion for Partial Summary Judgement on Counts I, II, III of Plaintiff's First Amended Complaint" and its response to Plaintiff's motion (Dkt. #62 & #67).[1] Defendant Tucows, Inc., (Tucows) also filed its response to Plaintiff's motion on February 13, 2007 (Dkt. #63). On February 20, 2007, Plaintiff filed his reply to Defendant Tucows response (Dkt. #68). On March 16, 2007, Plaintiff filed his reply to Defendant AOL LLC's response and filed his response to Defendant AOL

---

[1] On February 13, 2007, Defendant AOL LLC also filed a submission identically styled (Dkt. #61). It appears that this filing is incomplete and does not contain all of Defendant's exhibits. Defendant AOL LLC tried to rectify this oversight by filing another motion with its exhibits attached. Because Dkt. #61 & #67 contain verbatim arguments, **IT IS RECOMMENDED** that Defendant AOL LLC's less complete motion (Dkt. #61) be rendered moot and **DENIED.**

LLC's motion for partial summary judgement (Dkt. #82). On March 23, 2007, Defendant AOL LLC filed its reply to Plaintiff's response to its motion for partial summary judgement (Dkt #84).

All pre-trial matters were referred for general case management (Dkt. #16). Because the present motions are dispositive pursuant to Local Rule 7.1, these motions are being handled under 28 U.S.C. § 636(b)(1)(B). For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion (Dkt. #51) be **DENIED,** Defendant AOL LLC 's motion (Dkt. #67) be **GRANTED IN PART AND DENIED IN PART**, and Defendant AOL LLC 's motion (Dkt. #61) be **DENIED AS MOOTED** by a ruling on the nearly identical Dkt. # 67.

## II. BACKGROUND FACTS

### A. Alleged Cause of Action

As set forth in Plaintiff's Amended Complaint, Plaintiff is author and owner of the copyrighted audiovisual works "Pheasants in Flight Screen Saver" and "Solitude Screen Saver." America Online, Inc., (now AOL LLC) is an Internet Service Provider to which Plaintiff was a subscriber. (Dkt. #18, ¶ 12). Pursuant to contract, Defendant Tucows provided third-party Internet services to America Online, Inc., including but not limited to providing America Online, Inc., with certain uploading and downloading services, providing certain content for download on the America Online, Inc., site by America Online, Inc. members, and categorizing and indexing such content in a format designated by America Online, Inc. (Dkt. #27, ¶ 10).

America Online, Inc., maintained a center for its members through which they could upload and download software, thereby sharing software with other members (Dkt. #18, ¶¶ 13, 18). Plaintiff indicates that he granted America Online, Inc., a non-exclusive software licence to use his software for the downloading and personal use of its members subject to the following

restrictions:

> The uploader claims and guarantees to have full and clear copyright to this work. This work is for personal use of downloading member and may not be modified, distributed, etc. in whole or in part. This work cannot be uploaded to any electronic system or BBS or included in any compact disk (CD-ROM) or collection of any kind without the written permission from the uploader. To do so places the user at legal risk of sever [sic] fines and penalties for copyright infringement.

Plaintiff notes that this made his software available to America Online, Inc.'s "20,000,000+" members (Dkt. #18, ¶¶ 14, 21).

On or about July 23, 2003, Plaintiff claims that America Online, Inc. destroyed the old libraries containing the software and created a new upload/download center, which continued to make Plaintiff's software available to download. In doing so, Plaintiff alleges that America Online, Inc., exceeded the software license he had provided them and violated his copyright because it did not adequately inform him of the change in procedure (Dkt. #18, ¶¶ 21-24). This new center contained content provided by Tucows, including content that Tucows received from America Online, Inc., categorized and indexed, and returned to America Online, Inc., for the center.

Further, Plaintiff alleges that his copyrighted software was made available on Tucows' own Internet site. He claims that Tucows infringed his copyrighted software by "receiv[ing] from Defendant AOL a copy of the registered software for cataloging, testing, virus check, and posting to Defendant AOL's new download shareware site or in the alternative to Defendant Tucows.com, " and by making Plaintiff's "software available for distribution on the world wide (sic), whether through defendant AOL's site or not, without Plaintiff's consent" (Dkt. #18, ¶¶ 44, 52). Plaintiff alleges that therefore America Online, Inc., and Tucows are liable for copyright infringement. Tucows denies the content available for download on America Online, Inc.'s

3

internet site was ever "piped" through Tucows' Internet site (Dkt. #7).  Plaintiff's claims against Defendant Time Warner, Inc. is based on its alleged 2000 "merger" with AOL LLC's predecessor, American Online, Inc.  These claims have been dismissed by the Court and need not be addressed further in the present Report (Dkt. #92).

### III.   ANALYSIS

#### A.   The Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

    B.   <u>Factual Analysis</u>

        1.   *Time Warner*

Because it has been determined in other opinions of this Court (1) that no reasonable jury could find that there was a merger between American Online, Inc., and Time Warner, and (2) because AOL LLC is a subsidiary of Time Warner, and Plaintiff has not plead sufficient facts to make a plausible claim of vicarious or corporate successor liability on the part of Defendant Time Warner, Inc., **IT IS RECOMMENDED** that Plaintiff's motion against Defendant Time Warner, Inc. be **DENIED.**

        2.   *Tucows*

As set forth in Counts IV and V of Plaintiff's Amended Complaint, Plaintiff asserts that Tuscow is liable for copyright infringement because Tucows: (1) received from Defendant AOL a copy of Plaintiff's registered software for cataloging, testing, virus check, and posting to Defendant AOL's new download shareware site or in the alternative to Defendant Tucows' own website; and (2) by making Plaintiff's software available for distribution on the internet (Dkt. #18, ¶¶ 43-56). Yet, the only action that is apparent from the current evidence and party statements that Tucows performed that is even arguably among the exclusive rights of the copyright owner — and therefore a potential act of direct infringement — is the single act of copying a file for virus scanning. This action cannot constitute an infringement, however,

because Tucows merely acted as an agent of AOL within the scope of the license in the TOS. *See, Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749 (7th Cir. 2006).

On May 15, 2003, AOL and Tucows entered into a Content License Agreement. In accordance with the Content Agreement, Tucows provided certain outsourced services relating to content on AOL's computers that had been obtained from sources other than Tucows, including indexing and categorizing of the content and scanning for viruses (Dkt. #67, Ex. C, Content Licence Agreement § 3; Dkt. #67, Ex. D, Dooley Decl. ¶ 4).[2] Tucows performed these services by accessing files on AOL's computers. *Id.* To perform virus scanning, Tucows downloaded a temporary copy of a file from AOL's computers, scanned the file for viruses and allegedly deleted the temporary downloaded file. *Id.* Tucows performed all other services under the Agreement, including indexing and categorizing, directly on the files stored on AOL's computers. *Id.* Thus, these files remained on AOL's computers at all times and were downloadable only from AOL's computers. Moreover, Tucows is not permitted to download or otherwise make copies of the content or files embodying the content other than to perform the virus scanning service and is not permitted to distribute the content or files embodying the content.[3]

In *Automation by Design,* Raybestos Prods. Co. ("Reybestos") contracted with

---

[2] *See* Content Licence Agreement, § 5.2 ("AOL hereby grants Tucows a limited, revocable, non-exclusive licence to access, process, and modify certain AOL Files and solely for the purposes contemplated by this Agreement and for no other reason.") (Dkt. #67, Ex. C, Content Licence Agreement § 5.2).

[3] *See* Content Licence Agreement, § 3.1 ("Tucows shall not make AOL Files available for download on the Tucows' website") (Dkt. #67, Ex. C, Content Licence Agreement § 3.1; Dkt. #67, Ex. D, Dooley Decl. ¶ 5).

Automation by Design, Inc. ("ABD") to manufacture an industrial machine. *Id*. at 751. The contract included a non-transferable licence allowing Raybestos to "duplicate any or all design copyrighted by ABD, as it relates to this project" (the design was embodied in several mechanical drawings). *Id*. at 751-52. Raybestos later had a third party, Production Design Services, Inc. ("PDSI") build a second machine, and provided PDSI with a copy of the drawings and PDSI made of a copy of them. *Id*. at 752. ABD argued that Raybestos violated the licence agreement and that Raybestos and PDSI infringed the copyright. *Id.* at 751. The Court agreed with Raybestos that providing the drawings to PDSI did not result in a transfer of the licence (e.g. sub-licensing), but rather, that the licence extended to the actions of PDSI who was simply acting as an agent of Raybestos – performing actions for the benefit of Raybestos that Raybestos was entitled to perform under the licence. *Id.* at 757. The Court stated:

> . . . it seems clear that Raybestos simply hired PDSI to act in Raybestos' stead-using the design to create a machine that it likely did not have the capacity to create on its own. To see that Raybestos had the right to use the designs in this manner we need only look to a more clear-cut example. Take, for instance, Raybestos' right to duplicate the designs. All parties agree that this language clearly allowed Raybestos to make photocopies of the designs. If, however, Raybestos lacked the capacity to photocopy the designs on [site] (if, for example, the designs were to[o] large for an ordinary copier or needed to be reproduced in color), Raybestos could certainly take the designs to a Kinko's photocopy shop to have them copied. Similarly, if it lacked the capacity to manufacture parts on its own, it had the right to hire another to do so in its stead. It is true, as the dissent points out, that PDSI benefitted from having the designs. It benefitted in part, however, in the same way that Kinkos might benefit from being awarded a photocopy job. Additionally, of course, PDSI saved considerable time and expense by not having to reinvent the wheel. But again, had Raybestos opted to put engineers and manufacturers on its payroll to complete the job on its own, it would have saved considerable expense by having the designs rather than being forced to reverse engineer the machine. The benefit of having the designs, therefore, was Raybestos' benefit-a benefit for which it paid. Without the designs, Raybestos would have had to start from scratch-a contingency it avoided by requiring access to the designs as a term of the agreement. . .
> Allowing one's agent or contractor to use designs for one's own benefit is not a transfer.

*Id.* at 757-758.

Plaintiff attempts to distinguish *Raybestos* on several grounds. Plaintiff cites a passage from *Raybestos*—out of context and from a dissenting opinion—and asserts that the present case differs from *Raybestos* because Tucows allegedly copied Plaintiff's software in performing services for AOL while the agent in *Raybestos* purportedly did not copy the drawings at issue in that case. Yet, as clearly stated in *Raybestos*, the drawings were, in fact, copied by the agent PDSI:

> Raybestos provided PDSI with a copy of ABD's drawings to use during the manufacturing process. *PDSI made a photocopy of the ABD drawings*…

*Raybestos*, 463 F.3d at 752 (emphasis added).

Plaintiff also argues that a provision in the AOL-Tucows agreement labeling the parties as independent contractors and not agents precludes any argument that Tucows acted as AOL's agent. The same type of provision, however, was in the contract at issue in *Raybestos* and the Court specifically rejected this very same argument.

> ABD counters that PDSI could not have been Raybestos' agent because the two parties signed an agreement which specifically defined their relationship as that of independent contractors and not agents. (R. at 97, Ex. 8). This puts too fine a point on it. We need not delve into a complex discussion of agency to understand the term as Raybestos uses it here. Raybestos hired PDSI "to act for or in place of" itself, as a representative. *See* Black's Law Dictionary, (8th ed.2004) (defining "agent" as "[o]ne who is authorized to act for or in place of another; a representative.").

*Id*. at 757.

Tucows simply acted as AOL's agent in this case—performing limited functions that AOL otherwise had a right to do on its own. Accordingly, it is inappropriate to grant summary judgement against Defendant Tucows for acting in accordance with the Content Agreement

agreed upon between itself and AOL.

In addition, Plaintiff has failed to provide any direct evidence that Tucows made Plaintiff's software available for distribution on the internet. In his motion, Plaintiff appears to support his contention with Exhibits 5, 10 and 12 to his motion. Exhibit 5, which is a diagram/demonstrative that Plaintiff created himself, supposedly depicts how his software was uploaded to AOL, then uploaded to an AOL-Tucows "mirror" site, and then made available for download. Exhibit 10 – to the extent it is authenticated and substantiated as an actual screen display – displays a list of files available for download from AOL's computers in the "new" download center (Dkt. #67, Ex. D. Dooley Decl. ¶ 4). To the extent AOL copied Plaintiff's files and made them available for download in AOL's "new" download center – in the same manner as AOL did with the "old" download center — AOL had a perpetual, irrevocable licence allowing AOL to do so as discussed above. Moreover, this Exhibit would appear to relate to actions by AOL and not Tucows, and thus by itself cannot sustain a claim of direct copyright infringement by Tucows.

Plaintiff also cites Exhibit 12 and the existence of multiple copies of his files as evidence of infringement:

> Plaintiff uploaded two files, and now there were four; two were deleted on 1-16-2004, and two were deleted on 3-11-2004.

(Dkt. #51, p. 15).

As indicated in Exhibit 12, multiple copies existed because one set was located in the "old" download center (as uploaded by Plaintiff) while another set was located in the "new" download center (created by AOL). Again, however, to the extent copies were made for the new download center, the copies were made by AOL and not Tucows.

None of this evidence sufficiently demonstrates for the purposes of a summary judgment motion that Tucows violated any of Plaintiff's exclusive rights as a copyright owner. At best, it would be premature at this point to grant Plaintiff summary judgment when no discovery has been conducted on these essential factual issues, of which Plaintiff has no expertise. Clearly, there are genuine issues of material fact regarding Tucow's liability for copyright infringement. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion against Defendant Tucows be **DENIED.**

### 3. *AOL LLC : Direct Infringement*

Although Plaintiff requests summary judgment that AOL directly infringed Plaintiff's copyrights, Plaintiff fails to identify a single act of direct infringement by AOL. Plaintiff argues that AOL breached the TOS by failing to provide Plaintiff with "free upload time" (Dkt. #82, p. 15). Yet, Plaintiff does not — and cannot — identify any provision in the TOS that has been breached because there is no provision in the TOS that would provide Plaintiff with "free upload time."[4] Moreover, even if the TOS did contain a provision for "free upload time," Plaintiff cannot establish that any breach of the provision occurred. There is no evidence that Plaintiff was ever charged a fee to upload content to AOL. The only fee ever paid by Plaintiff to AOL was a monthly fee to access the AOL service. *See* Plaintiff's First Amended Complaint (Dkt. #18, p.¶ 60).

Plaintiff also argues that AOL breached the TOS by "sublicensing" rights to Tucows in

---

[4] Plaintiff asserts that the parties modified the TOS citing to Exhibits 3-6 in Plaintiff's Book of Exhibits (Dkt. #18-1). Even a cursory review of these exhibits, however, reveals that they are not a contractual agreement, but rather guidelines or instructions for uploading files. Further, even if the instructions were considered a contractual agreement, there is no indication that they acted as an amendment to the TOS as opposed to a separate, and unrelated, agreement.

the Content Agreement. The license contained in the Content Agreement is not a sublicense of Plaintiff's rights. As discussed in detail above, the license in the Content Agreement is a license of AOL's proprietary rights designed to allow Tucows sufficient rights to access AOL's computer systems and perform services under the Content Agreement. The license is not a sublicense of Plaintiff's copyrights nor the rights of any other AOL subscriber. Rather, the licence relates to AOL's proprietary rights in the content available on AOL's system.

Moreover, the act of licensing (or sublicensing) is not, in and of itself, a direct infringement.[5] "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501(a); *See, Sony Corp. v. Universal City Studios*, *Inc.*, 464 U.S. 417, 423-433 (1984). 17 U.S.C. § 106 establishes several exclusive rights of the copyright owner: (1) the right to reproduce the work; (2) the right to prepare derivative works (i.e., to modify the work); (3) the right to distribute the work; (4) the right to perform the work publically; (5) the right to display the work publicly. The act of entering into a license agreement does not, in and of itself, constitute a violation of any of these rights. As noted in *S.O.S., Inc. v. Payday*, 886 F.2d 1081, 1085 (9th Cir. 1989), cited by Plaintiff, it is "'copying' of protectable expression . . . beyond the scope of [the] license" that constitutes the infringement. AOL had an irrevocable, perpetual right to "use" the software uploaded by Plaintiff, to

---

[5] Plaintiff argues that the mere act of alleged "sublicensing" by AOL is an infringement of his copyrights (Dkt. #82, p 18-19). Plaintiff cites *Rano v. Siga Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) in support, but quotes several statements from *Rano* out of context. As discussed in *Rano*, it was the reproduction and distribution of the copyrighted works *after* termination of the license that allegedly infringed the copyright. *Id*. at 584-85. It is not the act of "sublicensing" or the breach of a license agreement that gives rise to an infringement claim; it is the exercise of one of the exclusive rights of the copyright holder following the breach or termination of the agreement. Plaintiff implicitly acknowledges this fact in his reply brief ("any further use…is copyright infringement.") (Dkt. #82, p. 19).

11

"reproduce" the software, to "modify" the software and to "distribute" the software, among other rights. As such, Plaintiff is unable to show that a direct infringement has occurred because there is no evidence that the licensee's performance under the agreement violates one of the exclusive rights listed above.

Finally, Plaintiff alleges that AOL's 2003 modifications to the TOS breached the TOS by incorporating terms with which Plaintiff did not agree.[6] Yet, the modifications made to the TOS

---

[6] Plaintiff cites Michigan statutes relating to contract formation. Yet, the TOS, to which Plaintiff admits he has agreed, are governed by Virginia law (Dkt. #15, Tab 2, 1995 TOS, p. 20, § 10; Dkt. #67, Ex. B, 1998 TOS, § 11A; Dkt. #15, Tab 1, 2003 TOS, p. 16, § 16a). Plaintiff brought this action pursuant to the Federal Copyright Statute and thus this Court has subject matter jurisdiction in accordance with 28 U.S.C. § 1338(a). Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction, such as in this case. *See, Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1991). Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws. *See id.* Under the Restatement, courts should enforce the parties' choice of law if the issue "is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflicts of Laws § 187(1) (1988). Even if the parties could not have directed a contractual provision to the issue, courts should honor their choice unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue" and that state would be the state of applicable law in the absence of a choice-of-law clause. *Id.* at § 187(2).

In this case, the parties specifically agreed that any disputes would be governed by Virginia law. The pertinent terms of the 2003 version of the TOS state: "The laws of the Commonwealth of Virginia, excluding its conflict of law rules, govern this Member Agreement and your membership." Further, the chosen state has a substantial relationship to the parties. Most of AOL's employees (i.e., potential witnesses) and records (i.e., sources of proof) are located in Virginia (Dkt. #15, ¶ 10). All current AOL personnel who were involved with management of AOL's member uploads and AOL's software libraries are located in Virginia. The computers on which the allegedly infringed software resided and from which it was allegedly downloaded—as well as all records relating to that software—are located in Virginia (Dkt. #15, ¶ 10).

Finally, "both Michigan choice-of-law rules and general equitable choice-of-law policies support enforcing parties' agreed-upon choice-of-law clauses absent any strong public policy concerns to the contrary." *In re Dow Corning Corp.*, 419 F.3d 543 (6th Cir. 2005). There are no strong policy concerns that would require using Michigan law to decide this matter. Accordingly, it is

in 2003, did not substantively alter the licensing provisions that are at issue.[7]  License provisions already in the TOS provided AOL with a "perpetual" and "irrevocable" license to the content Plaintiff uploaded.  Plaintiff became an AOL subscriber, or member, on December 26, 1995 (Dkt. #15, Sudler Decl. ¶ 3).  The TOS in effect at the time Plaintiff joined AOL (hereinafter, the "1995 TOS") included a broad licence in favor of AOL for any content uploaded to AOL by Plaintiff:

> By submitting Content to any "Public Area"(e.g., public chat rooms, message boards, software libraries, *see* ROR for definition), you automatically grant – or warrant that the owner of such Content has expressly granted – AOL, Inc. the royalty-free perpetual, irrevocable, non-exclusive right and license to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, perform and display the Content (in whole or in part) worldwide and/or to incorporate it in other works in any form, media or technology now known or later developed, for the full term of any Rights that exist in such Content.

(Dkt. #15, Tab 2, 1995 TOS, p. 21, § 4(b) ; *see also*, Dkt. #15, Tab, 2 "Rules of the Road" p. 22). The 1995 TOS also included an agreement allowing AOL to revise the TOS, allowing members such as Plaintiff to terminate their memberships if the changes were not acceptable, and noting that continued use would be deemed acceptance of the revisions (Dkt. #15, Tab 2, 1995 TOS, p. 19, § 1).

In 1998, AOL revised the TOS.  Yet, the 1998 TOS, using substantially similar language, included the same broad license in favor of AOL for any content uploaded to AOL by Plaintiff:

> By submitting Content to any "public area" of AOL (e.g., message boards, forums, the Member Directory), you grant AOL, Inc. and its affiliates the royalty-free

---

proper for this Court to utilize Virginia law in resolving any disputes arising from the Member agreement.

[7] Plaintiff also asserts that events surrounding the introduction of a "new upload agreement" impact his claim (Dkt. #51, p. 6, 12).  Yet, these events are irrelevant as well, as discussed below.

> perpetual, irrevocable, non-exclusive right (including any moral rights) and license to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, communicate to the public, perform and display the Content (in whole or in part) worldwide and/or to incorporate it in other works in any form, media or technology now known or later developed, for the full term of any rights that exist in such Content.

(Dkt. #67, Ex. B, 1998 TOS, p. 42-43, § 4B).

The 1998 TOS continued to include an agreement allowing AOL to revise the TOS, allowing members such as Plaintiff to terminate their memberships if the changes were not acceptable, and noting that continued use would be deemed acceptance of the revisions (Dkt. #67, Ex. B, 1998 TOS, § 1B).  Further, Plaintiff admits that this version of the TOS applied to him and that the alleged infringed screen savers were uploaded under the terms of the TOS:

> Plaintiff uploaded all software between 1999 and July 15, 2003. . . Therefore, plaintiff's uploads were under the 1998 TOS.

(Dkt. #51, p. 10; *see also* p. 4).

In 2003, AOL revised the TOS again.  The 2003 TOS again included the same broad license in favor of AOL for any content uploaded by Plaintiff:

> . . . by posting Content on an AOL Service, you grant AOL, its parent, affiliates, subsidiaries, assigns, agents and licensees the irrevocable, perpetual, worldwide right to reproduce, display, perform, distribute, adapt and promote this content in any medium.

(Dkt. #15, Tab 1, 2003 TOS, p. 11-12, § 10b).

Plaintiff terminated his membership on November 26, 2003 (Dkt. #15, Sudler Decl. ¶ 4).

In sum, Plaintiff's argument that AOL committed a "material breach" of the TOS resulting in termination of the TOS is without merit.  Plaintiff granted AOL an irrevocable, perpetual right to "use" the software uploaded by Plaintiff, to "reproduce" the software, to "modify" the software and to "distribute" the software, among other rights.  During the entire

length of Plaintiff's membership, AOL did not substantively alter the licensing provisions that are at issue in this case. Therefore, the license contained in the TOS controls resolution of Plaintiff's claims.

Plaintiff also asserts that events surrounding the introduction of a "new upload agreement" impact his claims (Dkt. #51, p. 6, 12). That "agreement" reads:

> Upload License and Release
>
> By submitting the file(s) you have identified above (the "Content") and/or checking off the upload License & Release acceptance box on the Member Upload page, you are (I) representing and warranting that you are the copyright owner or are authorized by the copyright owner to post the Content on the AOL service and make it available for further distribution, (ii) giving America Online, Inc. its members, affiliates, subsidiaries, assigns, licenses and agents, ("AOL") a royalty-free, irrevocable, perpetual, worldwide right and licence to use, reproduce, store, distribute, display, modify, transmit, create derivative works based upon, and promote your Content in any form, location, and manner and for any purpose the person or entity downloading the Content chooses, provided that AOL's members shall not be granted the right to sell, rent, lease, assign or otherwise commercially dispose of your Content, and (iii) representing and warranting that use of the Content by anyone who downloads it does not and will not infringe on any copyright, trademark right, patent right, privacy right, publicity right, or any other right of another person or entity nor violate any applicable law or regulation. You hereby hold AOL and anyone who makes use of your Content harmless from and against any third party claim arising from use of the Content. You waive any right to privacy. You waive any right to inspect and approve uses of the Content or to be compensated for such uses. **You understand that in addition to this license, you are bound by the AOL Terms of Service and Privacy Policy.** You hereby represent and warrant that you are at least 18 years of age and that you have read this Upload Licence and are fully familiar with its contents (Emphasis added).

(Dkt. #51, p. 5-6).

He argues that AOL "unilaterally impos[e]d" the license terms of the new upload agreement, but does not fully explain how the "new upload" agreement effects his claims. Regardless, the fact is that Plaintiff agreed to substantially the same licence terms on the first day of his membership (i.e., the 1995 TOS). Moreover, the introduction of the "new" upload agreement had no impact

15

on the existing licence under the TOS, as noted in the Upload Licence and Release cited above.[8]

Plaintiff has not alleged, a single act by AOL that is both (I) among the exclusive rights of a copyright owner and (ii) not covered by the license.  Plaintiff's only argument in response is that the license agreement does not apply.  For the reasons set forth above, this argument must fail.  Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion against Defendant AOL LLC be **DENIED**.  In addition, **IT IS RECOMMENDED** that Defendant AOL LLC's motion as it pertains to Counts I and II of Plaintiff's Amended Complaint be **GRANTED** as it is apparent AOL did not directly infringe Plaintiff's copyrights.

### *4.     AOL LLC : Contributory Infringement*

Contributory infringement "occurs when a defendant induces, causes, or materially contributes to the infringing conduct of another, with knowledge of the infringing activity." *Gordon v. Nextel Communications, Inc. and Mullen Advertising, Inc*., 345 F.3d 922, 925 (6th Cir., 2003).  Contributory infringement cannot exist without a direct infringement. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) (citing *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 693, 706 (2nd Cir. 1998) *cert. denied* 526 U.S. 1154 (1999) and *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1092 (9th Cir. 1994)

---

[8] Plaintiff makes reference in his motion to another license agreement included as part of his shareware software (allegedly including the software at issue in this litigation)(Dkt. #51, p. 10).  This agreement is also irrelevant to this analysis.  The agreement represents a license agreement between Plaintiff and third parties that subsequently downloaded his shareware software from AOL's computers.  AOL is not a party to this agreement and the agreement is not relevant to Plaintiff's claims against AOL for direct infringement.

Similarly, Plaintiff makes references to documentation he refers to as "PC Dan V's publication (App. 2)" as being "integrated with the TOS.  A review of this documentation reveals that it is not a contract or any part of one, but rather a set of answers to Frequently Asked Questions (FAQ) relating to uploading files.  Further, even if this "FAQ" page were part of a contract, it would not supercede or abrogate the terms of the TOS to which Plaintiff is subject.

*cert. denied* 513 U.S. 1001 (1994)). Plaintiff's claim against AOL is premised on his belief that Tucows committed an act of direct infringement by making Plaintiff's software available "for distribution to the world without Plaintiff's consent."

As discussed above, none of the evidence presented by Plaintiff sufficiently demonstrates for the purposes of a summary judgment motion that Tucows violated any of Plaintiff's exclusive rights as a copyright owner. Thus, his summary judgement should be denied as recommended above. Yet, while Plaintiff is not entitled to summary judgment on the present submissions, no discovery has been conducted on these essential factual issues, of which Plaintiff has no expertise. Defendant Tucows has not filed for summary judgment. Thus, absent Plaintiff having an opportunity for discovery, and until Tucows seeks summary judgment, it would be premature to grant Defendant AOL LLC summary judgment that it has not committed contributory negligence when there are genuine issues of material fact regarding Tucow's liability for direct copyright infringement. Accordingly, it is **RECOMMENDED** that Defendant AOL LLC 's motion as it pertains to Counts III of Plaintiff's Amended Complaint be **DENIED**.

## IV. RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion (Dkt. #51) be **DENIED,** Defendant AOL LLC 's motion (Dkt. #67) be **GRANTED IN PART AND DENIED IN PART**, and Defendant AOL LLC 's motion (Dkt. #61) be **DENIED AS MOOTED** by a ruling on the nearly identical Dkt. #67.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

      Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Dated: August 14, 2007                                        s/Steven D. Pepe
Flint, Michigan                                              United States Magistrate Judge

CERTIFICATE OF SERVICE

      I hereby certify that on <u>August 14, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Troy S. Brown, Harold Z. Gurewitz, Rebecca J. Hillyer, William F. Kolakowski, III, Krista L. Lenart,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>William E. Bennett, 465 Selkirk Dr., Mt.Morris, MI 48458-8918</u>

                                                                     <u>s/ James P. Peltier</u>
                                                                      James P. Peltier
                                                                      Courtroom Deputy Clerk
                                                                      U.S. District Court
                                                                      600 Church St.
                                                                      Flint, MI 48502
                                                                      810-341-7850
                                                                      pete_peliter@mied.uscourts.gov