UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM E. BENNETT,

           Plaintiffs,           Civil Case Number 06-13221

v.           Honorable David M. Lawson
           Magistrate Judge Steven D. Pepe

AMERICA ONLINE, INC.,
TUCOWS, INC., and JOHN DOE,

           Defendants.
_____/

**OPINION AND ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING RECOMMENDATION, GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT AMERICA ONLINE, INC., DENYING DUPLICATE MOTION BY DEFENDANT AMERICA ONLINE, INC. AS MOOT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The matter is before this Court on the plaintiff's objections to Magistrate Judge Steven D. Pepe's recommendation that the plaintiff's motion for summary judgment be denied, defendant America Online, Inc.'s (now AOL, LLC, referred to hereinafter as AOL) motion for partial summary judgment be granted in part, and a duplicate motion for partial summary judgment filed by defendant AOL be denied as moot. The plaintiff has filed a complaint for copyright infringement against the defendants for allegedly violating the terms of a license he unilaterally imposed as a condition of using two screen saver programs that the plaintiff uploaded for sharing when he was an AOL member. The Court referred the matter to Magistrate Judge Pepe for general case management. Judge Pepe previously recommended that a motion filed by then-defendant Time Warner, Inc. be granted, and the Court adopted that recommendation over the plaintiff's objection and dismissed Time Warner from the lawsuit. In the meantime, the plaintiff filed a motion for partial summary judgment against all the defendants (including Time Warner) on January 4, 2007; and defendant

AOL filed a motion for partial summary judgment on February 13, 2007, which apparently was missing some exhibits; so it filed a nearly identical motion with exhibits later that same day. On August 14, 2007, Judge Pepe filed a report recommending that the plaintiff's motion be denied, AOL's second motion be granted as to counts one and two of the amended complaint (alleging direct copyright infringement) and denied as to court three (alleging contributory infringement), and AOL's duplicate motion be denied as moot. The plaintiff filed timely objections, to which AOL responded. Neither AOL nor Tucows, Inc. filed objections of their own. The Court has conducted a *de novo* review of the matter and now concludes that the plaintiff's objections to the report and recommendation lack merit; he has not stated a valid claim against defendant AOL for direct infringement because AOL's actions fell within the scope of the license stated in the 1998 Terms of Service Agreement (which license remains in effect); and the plaintiff has not shown as a matter of law that defendant Tucos infringed his copyright. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, grant AOL's motion in part, deny the plaintiff's motion, and deny AOL's duplicate motion as moot.

I.

The plaintiff's amended complaint filed on October 2, 2006 contains eight counts. Counts one through three allege various instances of copyright infringement against AOL, counts six through eight allege breach of an implied contract against AOL, and counts four and five allege copyright infringement against defendant Tucows. The plaintiff first subscribed to AOL in late December 1995, and he was subject to a Terms of Service Agreement (TOS) that was then in effect. AOL amended its TOS in 1998 and again in August 2003. The plaintiff did not agree with the changes introduced in the 2003 TOS, and he cancelled his membership thereafter, as was his right.

On July 15, 2003, the plaintiff uploaded the two screen savers to an AOL library accessible by all AOL members. He acknowledges that he uploaded his screen saver files to AOL under the 1998 TOS. The 1998 TOS contains the following provision:

> By submitting Content to any "public area" of AOL (e.g., message boards, forums, the Member Directory), you grant AOL, Inc. and its affiliates the royalty-free perpetual, irrevocable, non-exclusive right (including any moral rights) and license to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, communicate to the public, perform and display the Contend (in whole or in part) worldwide and/or to incorporate it in other works in any form, media or technology now known or later developed, for the full term of any rights that exist in such content.

AOL's Mot. for Partial Summ. J., Ex B, TOS 4-5,§ 4B. However, the plaintiff contends that when he uploaded his screen savers, he unilaterally imposed the following restrictions:

> The uploader claims and guarantees to have full and clear copyright to this work. This work is for personal use of downloading member and may not be modified, distributed, etc. in whole or in part. This work cannot be uploaded to any electronic system or BBS or included in any compact disk (CD-ROM) or collection of any kind without the written permission from the uploader. To do so places the user at legal risk of sever [sic] fines and penalties for copyright infringement.

Pl.'s Mot. for Partial Summ. J., Ex. 1. The plaintiff uploaded the files at issue to AOL through his AOL connection, and AOL apparently put these files in what the plaintiff refers to as the "old screen saver libraries."

AOL members also were bound by "Rules of the Road," which advised subscribers that one "type [of content that can be uploaded to AOL] is content protected by copyright, trademark, moral rights, or other intellectual and proprietary rights, but the holder of those Rights has expressly authorized distribution on AOL or the Internet without restriction." AOL's Mot. for Partial Summ. J., Ex. B at 20. AOL reserved the right to "change the TOS at any time," but if a subscriber objected to the new terms, he or she could terminate the membership before the new TOS became effective.

*Id.*, Ex. B at 1.  The agreement further provides that "[t]he laws of the Commonwealth of Virginia, excluding its conflict-of-law rules, govern the TOS and your membership."  *Id.*, Ex. B at 13.

On May 15, 2003, AOL entered into an agreement with defendant Tucows for "outsourced services" with respect to stored material.  The services included indexing, categorizing the content, and scanning for viruses in files that originated outside AOL.  Performance of these services required Tucows to access and sometimes download temporary copies of files from AOL's computers.  The services were performed under a written agreement.  That agreement contained provisions allowing AOL to "provide Tucows, in its sole discretion, certain AOL Files to be indexed, edited and categorized by Tucows for download on the AOL Network."  *Id.*, Ex. C at 1.  However, Tucows acquired "no right, title or interest in or to the AOL Material and the intellectual property rights appurtenant thereto."  *Id.*, Ex. C at 3-4.  Christopher Tooley, a software engineer at AOL, filed a declaration averring that "Tucows is not permitted to download or otherwise make copies of the content of files embodying the content other than to perform the virus scanning service set forth above and is not permitted to distribute the content or files embodying the content."  *Id.*, Ex. D at 2.  Tucows maintains that it deleted the temporary files when it was finished working on them.

According to the plaintiff, on July 22, 2003, AOL destroyed all links to the old screen saver libraries and no longer made those libraries available to its members.  AOL created a new upload/download center that was linked to defendant Tucows' website.  The plaintiff believes this violated his copyrights.

AOL updated its TOS, to become effective on August 3, 2003, to state that "by posting Content on an AOL Service, you grant AOL, its parent, affiliates, subsidiaries, assigns, agents and

licensees the irrevocable, perpetual, worldwide right" to use the file. The plaintiff objected via e-mail to the expansion of who was given the license (from "AOL, Inc. and its affiliates" to the list above) on July 31, 2003. Pl.'s Obj. at 15. He reasons that AOL's attempt to expand the TOS rescinded the 1998 TOS, and because he rejected the new TOS, there was no license that governed his software. Therefore, any use of the software by AOL or Tucows is an infringement. Dissatisfied with the response to his complaints, the plaintiff cancelled his AOL membership on November 26, 2003. He believes that 109 copies of his "Pheasant in Flight" screen saver and 738 copies of his "Solitude" screen saver were unauthorizedly downloaded from the "old" download center by late 2003, and seven unauthorized downloads were made in late 2003 from the "new" download center.

The plaintiff filed its motion for partial summary judgment on the copyrights counts, seeking judgment as a matter of law against AOL on counts one, two, and three, and against Tucows on counts four and five. The plaintiff's motion also requested relief against Time Warner. AOL filed an answer in opposition to the motion together with its own motion for partial summary judgment on those counts. Tucows filed an answer opposing the plaintiff's motion, but it did not file a motion of its own.

Magistrate Judge Pepe first concluded that the plaintiff was not entitled to summary judgment against Time Warner, because Time Warner had been dismissed from the case. Next, the magistrate judge concluded that the plaintiff was not entitled to summary judgment against Tucows for copyright infringement because the only facts that the plaintiff had shown relevant to his claim for copyright infringement was that Tucows copied the files for virus scanning. Relying heavily on *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749 (7th Cir. 2006), Judge Pepe concluded that this act did not amount to copyright infringement, because Tucows acted as AOL's

agent when it obtained the files and scanned them and thereby merely undertook actions on behalf of AOL that AOL was itself authorized to do.  The magistrate judge also rejected the plaintiff's argument that AOL breached the contract by "sublicensing" the screen savers, since sublicensing does not violate any exclusive right in the copyright owner.

The magistrate judge noted that the plaintiff offered only three pieces of evidence supporting his claim that Tucows violated his copyright privileges: a diagram created by the plaintiff illustrating what he believes happens to his files; a screenshot showing his files available for download in the "new" download center; and an e-mail from AOL suggesting his files were available in the new download center.  None of these facts establish a copyright infringement against either Tucows or AOL because they do not show Tucows involvement at all, and AOL had an irrevocable license through any applicable TOS to perform any of these acts. The magistrate judge found that it was unimportant which TOS governed the parties, because all versions of the TOS granted a broad license from the plaintiff to AOL that covered AOL's actions.  Under the TOS, the defendant AOL could not have committed a copyright violation with the actions shown by the plaintiff, and therefore it was entitled to summary judgment on counts one and two of the amended complaint.  However, the magistrate judge denied the defendant AOL's motion for summary judgment as to contributory infringement because the plaintiff had little opportunity for discovery.

The magistrate judge denied as moot defendant AOL's first motion for summary judgment because it appeared to be a duplicate motion seeking the same relief as its second motion.

The plaintiff has interposed four objections:

1. The Magistrate ruled that Virginia Law governed, but the parties were not given the opportunity to argue Virginia's contract law; and
2. The Magistrate decided AOL and Tucows relationship on Indiana's law and NOT Virginia's; and

>  3. Under Virginia's Uniform Computer Information Transactions Act (UCITA), Plaintiff has a cause of action on Counts I, through VIII of the Amended Complaint #1; and
>  4. Under Virginia's UCITA, Plaintiff is entitled to Summary Judgment of liability on Counts I, through III and against AOL on the admitted facts and Plaintiff's uncontroverted affidavit.

Pl.'s Obj. at 2. The plaintiff has not objected to the denial of summary judgment against Time Warner. The defendants have not objected to the report and recommendation.

## II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). The parties' failure to file objections to the Report and Recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### A.

The plaintiff failed to object to the magistrate judge's recommended denial of his motion as to defendant Time Warner. AOL faled to object to the recommended denial of its motion for summary judgement on count three of the amended complaint. Those parts of the magistrate judge's report and recommendation therefore will be adopted.

B.

The plaintiff's first objection is that the parties were not permitted to argue the effects of Virginia law on the transaction after the magistrate judge concluded that Virginia law governed. Judge Pepe found that the choice-of-law provision in the contract designating Virginia law should be given effect. He discussed that point in footnote 6 on page 12 of his report, where he criticized the plaintiff's citation to Michigan statutes regarding contract formation. The Court agrees with Judge Pepe's reasoning on the choice of law issue. The parties were on notice that Virginia law applied: they agreed to that provision in the TOS, and AOL previously sought transfer of this action to the district court in Virginia (which the plaintiff vigorously opposed) partly on the basis of that provision. Moreover, the plaintiff has had an opportunity to cite Virginia state law authority in his objections. The plaintiff's first objection therefore lacks merit.

C.

The plaintiff next criticizes the magistrate judge's report believing that the magistrate judge relied on Indiana law in concluding that AOL's actions were permitted under the 1998 TOS. Copyright law, of course, is grounded in federal law. Copyright law protects an owner's rights to creative works of authorship including "literary works." 17 U.S.C. § 102(a)(1). A computer program is defined under Title 17 as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. Computer programs fall within the definition of literary works. *Lexmark Int'l, Inc. v. Static Control Components*, Inc., 387 F.3d 522, 533 (6th Cir. 2004).

A copyright owner has the exclusive rights to do and authorize the following:

   (1) to reproduce the copyrighted work in copies or phonorecords;
   (2) to prepare derivative works based upon the copyrighted work;

> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. A plaintiff can establish copyright infringement by showing "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir.1999) (citation and quotation omitted).

An infringing copy of a computer program has been made when an "electronic copy of the signals that tell a computer what to do [are] . . . stored [by an infringer] on a device like a floppy disk or a hard drive." *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1031 (E.D. Mich. 1998) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1248-49 (3d Cir. 1983)).

"A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2nd Cir. 1998); *see also* 17 U.S.C. § 201(d). The plaintiff alleges that defendant AOL exceeded the scope of its licenses. A licensee who exceeds the scope of its copyright license may infringe the licensed copyright. *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 749 (E.D. Mich. 1998). The burden is on the plaintiff licensor to demonstrate that the licensee exceeded the scope of the license. *Ibid*. That is, once the existence of a license is established, the copyright owner must show that the acts complained of are not within the scope of the license. *Graham*, 144 F.3d at 236.

A license agreement is a contract.  *See Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).  Therefore, the scope of the license involves an application of state law, to the extent it is not preempted by federal copyright law.  *SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989).

As noted earlier, when the magistrate judge determined that Tucows was acting as an agent fo AOL, so any copying of the old upload file for utility services fell under AOL's privileges as a licensee, he relied on a Seventh Circuit case, *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749 (7th Cir. 2006).  That case was decided under federal copyright law, but the court drew from the basic tenets of Indiana contract law as well.  The principles for which the magistrate judge cited *Automation by Design*, however, were not unique to Indiana jurisprudence, and they are shared by Virginia common law.  For instance, under Virginia law, "[w]here contracts are 'plain upon their face, they are to be construed as written, and the language used is to be taken in its ordinary significance unless it appears from the context it was not so intended."  *Brizzolara v. Sherwood Memorial Park, Inc.*, 645 S.E.2d 508, 515 (Va. 2007) (internal quotations and citations omitted).  The magistrate judge concluded in this case that the license granted to AOL in the 1998 TOS permitted it to employ an agent to work on uploaded files in the same manner as if AOL could perform the work itself under the terms of the license.  That is hardly a novel proposition, and the happenstance that *Automation by Design* referred to Indiana law to support the rudimentary principle of contract construction that is common to most states does not undermine the magistrate judge's conclusion or give merit to the plaintiff's second objection.

D.

The plaintiff's third and fourth objections are premised on the application of provisions contained in Virginia's Uniform Computer Information Transactions Act (UCITA). Those objections lack merit because that act was not adopted until 2000, and the magistrate judge determined – correctly – that the events in this case are governed by the 1998 TOS. A secton of that act states: "Contracts that are enforceable and rights of action that accrue before the effective date of this chapter are governed by the law then in effect unless the parties agree to be governed by this chapter." Va. Code § 59.1-509.2. The enactment of the UCITA, therefore, had no effect on the 1998 TOS.

Nonetheless, even under that act, contracts may be performed through a delegate, unless "(1) the contract prohibits delegation or subcontracting; or (2) the other party has a substantial interest in having the original promissor perform or control the performance." Va. Code § 59.1-505.5. The statute defines the rights under a license as follows:

> (a) A license grants:
> (1) the contractual rights that are expressly described; and
> (2) a contractual right to use any informational rights within the licensor's control at the time of contracting which are necessary in the ordinary course to exercise the expressly described rights.
> (b) If a license expressly limits use of the information or informational rights, use in any other manner is a breach of contract. In all other cases, a license contains an implied limitation that the licensee will not use the information or informational rights otherwise than as described in subsection (a). However, use inconsistent with this implied limitation is not a breach if it is permitted under applicable law in the absence of the implied limitation.

Va. Code § 59.1-503.7.

The license granted in the 1998 TOS was quite broad.  nothing in this statute limited AOL's right to organize, catalog, or scan for viruses in uploaded files or to contract to a third party to provide those services.

The magistrate judge concluded that the plaintiff's direct copyright infringement claims fail because he either has not provided any evidentiary support for his claims or because he granted AOL a broad, irrevocable license to use the files.  The Court agrees.  The plaintiff has shown no more than that his uploaded screen savers were scanned for viruses and organized for display in a reorganized section of the AOL member site by Tucows.  Contrary to the plaintiff's claim, AOL had a license in 2003 that permitted it to make available his uploaded files for download.  Even if the plaintiff is correct that he effectively rejected the terms of AOL's revised TOS and license in 2003, AOL's proposed revision to the contract does not rescind the pre-existing, irrevocable license granted under the 1998 TOS.

The plaintiff did not establish as a matter of law that he is entitled to free upload time from AOL.  He does not point to a particular portion of the TOS that confers such upload time, and he argues no more than that benefit was "implied."  Fact issues preculed judgment in his favor on those claims.  The argument that the breach of this alleged implied contract somehow negates the TOS finds no support in the law.  Nor is the TOS invalid for want of consideration, as the plaintiff benefitted from having a forum for his files and access to AOL content and the Internet as a subscriber.

### III.

The plaintiff's objections to Magistrate Judge Pepe's report and recommendation lack merit. The Court agrees with the magistrate judge's recommendations.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #95] is **ADOPTED**, and the plaintiff's objections [dkt #97] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for partial summary judgment [dkt #51] is **DENIED**.

It is further **ORDERED** that the motion for partial summary judgment by defendant America Online, Inc. [dkt #67] is **GRANTED IN PART**. Counts one and two of the plaintiff's amended complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion for partial summary judgment by defendant America Online, Inc. [dkt #61] is **DENIED as moot**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: September 28, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 28, 2007.

                              s/Felicia M. Moses
                              FELICIA M. MOSES